**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| NATIONAL ELECTRICAL BENEFIT FUND, | : : : : | |
| Plaintiff, | : : | Civil Action No. 06-1446 (JAG) |
| v. | : : | **OPINION** |
| STARKO ELECTRIC SERVICES, INC., et al., | : : : | |
| Defendants. | : : | |

**GREENAWAY, JR., U.S.D.J.**

      This matter comes before this Court on Defendants Starko Electric Services, Inc.'s ("Starko") and Star Lo Electric Inc.'s ("Star Lo") motion for Reconsideration of this Court's Opinion (Docket Entry No. 44) and Order (Docket Entry No. 43), dated June 30, 2008, which granted Plaintiff National Electrical Benefit Fund's ("NEBF") motion for summary judgment and denied Defendant's cross-motion for summary judgment. For the reasons set forth below, the motion for reconsideration shall be denied.

**I. BACKGROUND**

      The NEBF is a multi-employer pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2). NEBF v. Starko at 1, Docket Entry No. 44. The NEBF was established pursuant to an agreement entered

1

into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA"). (Id.) The Defendants are signatories to labor agreements which do not require the employer to pay vacation pay, sick pay, or personal days, or to grant vacations. (Id. at 2.) The labor agreements, however, do provide that the employer is bound by the terms of the Restated Benefit Agreement and Trust of the NEBF ("Trust Agreement"). (Id.)

Defendants ask this Court to reconsider the Court's Opinion, dated June 30, 2008, in which this Court granted Plaintiff's motion for summary judgment and denied Defendants' cross-motion for summary judgment. The central dispute between the Plaintiff and Defendants is whether holiday and vacation pay constitute part of the "gross labor payroll" and ought to be included when calculating the amount of contributions owed by Defendants to the Plaintiff. (Id. at 5.) Defendants argue that holiday and vacation pay granted to some employees should not be included when calculating the amount of contributions due. Plaintiff argues that the terms of the Trust Agreement require contributions based on wages and other compensation, including those paid for holiday and vacation time. This Court held that the term "gross labor payroll", as defined in the Trust Agreement, was unambiguous as a matter of law. (See Id.)

In their motion for reconsideration, Defendants argue that this Court did not give sufficient weight to industry standards in rendering its decision. Specifically, Defendants claim they received incomplete discovery from Plaintiff pertaining to industry practices concerning the method by which gross labor payroll is calculated. (Tr. February 4, 2009 at 27:12-28:6.) Defendants ask this Court to set aside its opinion and reopen the record to permit additional discovery.

## II.  LEGAL STANDARD

A motion to reconsider, pursuant to FED. R. CIV. P. 59(e) and L. CIV. R. 7.1(i), is "an extremely limited procedural vehicle," and requests pursuant to these rules are to be granted "sparingly." P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 1992) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)).  The Third Circuit has held that the purpose of a motion to reconsider is to "correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

A court may grant a motion to reconsider only if the moving party shows either: (1) an intervening change in the controlling law; (2) the existence of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  See N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).  To satisfy its burden, the moving party must show "dispositive factual matters or controlling decisions of law" that were brought to the court's attention but not considered. P. Schoenfeld Asset Mgmt. LLC, 161 F. Supp. 2d at 353; see also Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).  "The motion may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached." P. Schoenfeld Asset Mgmt., L.L.C., 161 F. Supp. 2d at 352.  "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and argument considered by the court before rendering its original decision fails to carry the moving party's burden.'" Id. (quoting G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (internal citations omitted)).

3

The "proper ground for granting a motion to reconsider, therefore, is that the matters or decisions overlooked, if considered by the court, 'might reasonably have altered the result reached.'" G-69, 748 F. Supp. at 275 (quoting New York Guardian Mortgagee Corp. v. Cleland, 473 F. Supp. 409, 420 (S.D.N.Y. 1979)).

### III. ANALYSIS

Defendants argue that new evidence has come to light which would alter this Court's interpretation of the definition of gross labor payroll and serve as grounds for the court to vacate its opinion. See N. River Ins. Co., 52 F.3d at 1218.[1] During oral argument, Defendants explained to the Court that shortly after this Court rendered its decision in NEBF v. Starko, et al. (Docket Entry No. 44), new information came to light concerning the definition of gross labor payroll. (Tr. February 4, 2009 at 27:18-27:24.)

Defendants directed the Court to a letter from Defendants' counsel, sent to the Court, dated August 22, 2008, in which Defendants alleged that they had received–for the first time–documents during discovery in an unrelated case indicating that there was confusion on the part of the NEBF concerning the definition of gross labor payroll. (Id.) Defendants attached a portion of minutes of the IBEW's Labor Management Collection Committee meeting of February 20, 2007 to their letter to the Court.  Defendants stated that the minutes "clearly reveal that the term gross labor payroll was not self-explanatory and that there was confusion over whether benefits were due on vacation pay and/or bonuses."  (Letter of Robert M. Tosti, August 22, 2008, Docket Entry No. 51.)

---

[1] Defendants do not argue, as the basis of this motion for reconsideration, that there has been a change in the controlling law or that there is a need to correct a clear error of law in this Court's initial decision.  Defendants offer only evidence which they consider to be new as the basis for this motion for reconsideration.

4

Defendants contend that the minutes are only part of the discovery that Defendants expect to receive in the unrelated matter, and ask this Court to set aside its decision of June 30, 2008 in order to allow additional discovery. (Tr. February 4, 2009 at 34:6-35:21). Defendants argue that when new information regarding intra-union debate between various Local 102 counsel, which concerns the definition of gross labor payroll, is read in conjunction with language in the labor agreement, it sheds light on the meaning of gross labor payroll as defined in the Trust Agreement between NEBF, Starko and Star Lo. (Id.)

In a letter to this Court dated January 28, 2009, Defendants point to deposition testimony given by Patrick Delle Cava, the Assistant Business Manager for Local 102 (who had served as the collection agent for the NEBF). Delle Cava stated that employers were not basing fund contributions on W-2 wages, and that for many years when the financial administrators made their reports to the Funds on the contributions and monies collected, they did so in terms of contributions based on "hours worked". (Letter of Robert M. Tosti, January 28, 2009 at 2, Docket Entry No. 61.) As such, Defendants argue that gross labor payroll would not have included vacations, holidays, sick pay or bonuses, as these would not be considered "hours worked." (Id.)

In response to Defendant's assertions, Plaintiff points out that new evidence provided by Defendants in their various submissions to the Court do not acknowledge an ambiguity in the language of the NEBF Trust Agreement, and were not made by NEBF trustees or anyone with authority to speak on behalf of the NEBF or its plan sponsors (the IBEW and NECA). (Letter of Jennifer Bush Hawkins, February 9, 2009 at 1-2.) Plaintiff further asserts that the statements Defendants rely upon refer to the meaning of gross labor payroll as it applies to other funds and does not in any way reflect any ambiguity in the NEBF Trust Agreement. (Id.) Plaintiff states that

5

deposition testimony Defendants cite to is similarly irrelevant because Delle Cava has no authority to interpret provisions in the NEBF governing documents and that NEBF's Trust Agreement specifically states that a local collection agent's interpretation of the Trust Agreement is non-binding. (Id. at 3.)

Plaintiff also asserts that Delle Cava's testimony is not probative of industry practice because he was only questioned as to his knowledge of actions taken at Local 102. Plaintiff argues that 10,000 to 12,000 employers participate in the NEBF in hundreds of IBEW local unions all across the United States. (Id.) Plaintiff also refers this Court to litigation it has brought against at least one local union for failure to compute gross labor payroll properly and pay on all W-2 wages. (Id. at 3-4).

Federal law governs the interpretation of terms in collective bargaining agreements and trust agreements. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456 (1957). "The determination of whether a contract term is clear or ambiguous is a pure question of law..." Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor cars, Inc. 989 F.2d 132, 135 (3d Cir. 1993). "It is the role of the court to interpret a written contract when 'the terms and surrounding circumstances are unambiguous.'" Pension Fund for Nursing Homes and Health Care Employees-Phila. and Vicinity v. Resthaven Nursing Ctr., No. 07-0313, 2008 WL 2132097, at *3 (E.D. Pa. May 20, 2008) (citing Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning, 934 F.2d 35, 41 (3d Cir. 1991)). To determine whether a contract term is ambiguous, courts look to "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Resthaven Nursing, 2008 WL 2132097, at *3. Courts examine the proffer of the parties, as well as

6

objective indicia, to determine whether a contract is capable of more than one construction.

This Court has reviewed the parties' submissions, including the new evidence offered by Defendants, and also has reviewed the relevant portions of the Trust Agreement and the labor agreements, and will not vacate its Opinion and Order dated June 30, 2008.  This Court is not convinced that the additional evidence proffered by Defendants is either new or indicative of industry practice concerning the calculation of gross labor payroll.  At best, the "new" evidence indicates that some local union officials sought clarification as to the precise meaning of the term "gross labor payroll".  Defendants were given a sufficient opportunity for discovery and there is no basis to infer that Plaintiff deliberately withheld information from Defendants during the initial discovery.

Defendants have offered no new evidence of ambiguity in the interpretation of the Trust Agreement by NEBF or its Trustees.  Thus, there is no basis to alter this Court's finding that the term gross labor payroll is not ambiguous , as defined in the Trust Agreement.  Looking at the plain language of the Trust Agreement, as it pertains to "gross labor payroll", it is evident to this Court that vacation pay, holiday pay, bonuses, and sick leave are required to be included in the calculation of gross labor payroll under the Trust Agreement.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for reconsideration of this Court's June 30, 2008 Opinion and Order is denied.

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:  March 23, 2009