<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                :

| | | |
|---|---|---|
| NATIONAL ELECTRICAL BENEFIT FUND, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 06-1446 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STARKO ELECTRIC SERVICES, INC. and STAR-LO ELECTRIC, INC., | : | |
| | : | |
| Defendants. | : | |

_____:

<u>**GREENAWAY, JR., U.S.C.J.**</u>[1]

This matter comes before this Court on the motion of plaintiff National Electrical Benefit Fund ("Plaintiff") for the award of damages, attorney's fees, and costs ("Motion") from defendants Starko Electric Services, Inc. ("Starko") and Star-Lo Electric, Inc. ("Star-Lo") (collectively, "Defendants").  (Docket No. 54.)  For the reasons explained in this Opinion, Plaintiff's motion is granted.

**FACTS**

The facts relevant to Plaintiff's Motion are as follows.  Jon F. Waters and D.R. Borden—trustees of, and fiduciaries to, Plaintiff— filed separate complaints on behalf of Plaintiff against Starko (Docket No. 1), and Star-Lo (Civil Action No. 06-1445, Docket No. 1),

_____

[1] Sitting by designation on the District Court.

1

on March 27, 2006.  The cases were consolidated, by order of Judge Tonianne J. Bongiovanni,

on November 1, 2006.  (Civil Action No. 06-1445, Docket No. 6.)  The gravamen of Plaintiff's

complaints was that Defendants did not make contributions to Plaintiff's pension fund, in

accordance with Defendants' obligations under the collective bargaining agreement between the

parties, in violation of the Employee Retirement Income Security Act ("ERISA").  Specifically,

Plaintiff alleged that Defendants failed to contribute to Plaintiff's pension fund for vacation and

holiday pay.  Nat'l Elec. Benefit Fund v. Starko Electric Services, Inc., No. 06-1446, 2008 WL

2683617, at * 3 (D.N.J. July 1, 2008).  Defendants argued that holiday and vacation pay granted

to some employees should not be included in the calculus to determine the amount of

contributions due.  Id.

　　　This Court issued an Order granting Plaintiff's motion for summary judgment, and

denying Defendants' cross-motion for summary judgment, on June 30, 2008.  (Docket No. 43.)

In the Opinion accompanying that Order, this Court explained that Defendants' contributions to

Plaintiff's pension fund must account for vacation and holiday pay.  Nat'l Elec. Benefit Fund,

2008 WL 2683617, at * 3.  This Motion concerns the amount of damages, attorney's fees, and

costs owed by Defendants to Plaintiff, the prevailing party, in light of this Court's prior Order

and Opinion.[2]

　　　Plaintiff argues that, pursuant to 29 U.S.C. § 1132(g)(2), and the Trust Agreement

between the parties, the Court shall award:  (a) the unpaid contributions; (b) interest on the

---

[2]  Because Plaintiff achieved the entirety of what it sought by the lawsuit, and "the
litigation constituted a material contributing factor in bringing about the events that resulted in
the obtaining of the desired relief," it is entitled to recover attorney's fees as a prevailing party.
Metropolitan Pittsburgh Crusade for Voters v. Pittsburgh, 964 F.2d 244, 250 (3d Cir. 1992).

unpaid contributions; and (c) reasonable attorney's fees and costs of the action.[3]  (See generally Docket No. 54 ("Mot.").)

Defendants argue that the attorney's fees sought by Plaintiff are unreasonable, some of the costs submitted by Plaintiff are not compensable under ERISA, the audit fees charged by Plaintiff are unreasonable, and the audits submitted by Plaintiff are rife with errors and must be adjusted.  (Docket No. 59 ("Opp."), i.)  In addition, Defendants ask this Court to reduce the attorney's fees to be awarded to Plaintiff in light of Lohman v. Duryea Borough, 574 F.3d 163 (3d Cir. 2009).  Defendants argue that, pursuant to Lohman, this Court should consider evidence of the parties' settlement negotiations, and reduce the attorney's fees to be awarded to Plaintiff, because of Plaintiff's rejection of the settlement offer made by Defendant.  (Docket No. 73.)

---

[3]  29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Plaintiff notes that while 29 U.S.C. § 1132(g)(2)(C) and § 6.9.2 of the Trust Agreement entitles Plaintiff to liquidated damages, it makes no claim for liquidated damages in this case. (Mot., 5.)  In addition, while § 1132(g)(2)(E) provides that this Court may award other legal or equitable relief as it deems appropriate, Plaintiff does not move this Court to award such relief, and this Court does not deem such relief appropriate in this case.

3

**ANALYSIS**

**I.    Attorney's Fees And Costs**

29 U.S.C. § 1132(g)(2)(D) provides that, once a "judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant."  Plaintiff moves this Court to order Defendants, jointly and severally, to pay Plaintiff $61,766.63, representing the attorney's fees and costs incurred by Plaintiff through November 24, 2009.  (Docket No. 74, ¶ c.)  Defendants argue that the attorney's fees sought by Plaintiff are unreasonable, and must be reduced, because Plaintiff has not proffered competent evidence that the hours worked and the rates claimed are reasonable.  (Opp., 3-6.)  Defendants also argue that Plaintiff is not entitled to costs related to travel time of its outside counsel, nor to costs related to computerized legal research.  (Id. at 6-8.)

**A.    Attorney's Fees**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  "The product of an attorney's hourly rate and the number of hours spent is referred to as the 'lodestar.'"  Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005).  "The lodestar is strongly presumed to yield a reasonable fee."  S.G. v. Manville Bd. of Educ., 989 F. Supp. 649, 656 (D.N.J. 1998) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Rode, 892 F.2d at 1183).

"A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable."  Interfaith Cmty. Org., 426 F.3d at 703 n.5

(citing Rode, 892 F.2d at 1183).  As an initial step, "the fee petitioner must 'submit evidence supporting the hours worked and the rates claimed.'"  Rode, 892 F.2d at 1183 (quoting Hensley, 461 U.S. at 433).  "If it wishes to challenge the fee award, the opposing party must then object 'with sufficient specificity' to the request."  Interfaith Cmty. Org., 426 F.3d at 703 n.5 (quoting Rode, 892 F.2d at 1183).  "Once the opposing party has objected, the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."  Id.  "In reviewing a fee application, a district court must conduct 'a thorough and searching analysis.'"  Id. (quoting Evans v. Port Auth. of N.J. & N.Y., 273 F.3d 346, 362 (3d Cir. 2001)).

### (1)   Reasonable Hourly Rate

As a general rule, a reasonable hourly rate is calculated according to the prevailing market rate in the community.  See Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories, 842 F.2d 1436, 1448 (3d Cir. 1988) (holding that the district court applied the correct standard in employing "the community market rate").  "[T]o determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Interfaith Cmty. Org., 426 F.3d at 708 (quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001)).  "The party seeking fees 'bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard.'"  Id. (quoting Loughner, 260 F.3d at 180 (citations and internal quotations omitted)).

Plaintiff, by affidavit, testifies that it was charged the following billable rates:

1.   Attorney Jennifer Bush Hawkins ("Hawkins"), of Potts-Dupre, Difede & Hawkins, Chtd. ("Potts-Dupre"), initially charged a hourly billing rate of $255 for work done in 2005. (Docket No. 54, Affidavit of Attorney in Support of Damages Award ("Hawkins Aff."), ¶ 3.)  The rate was raised to $275 in early 2006, to $291 in 2007, and to $303 in 2008.  (Id.)

2.   Paralegals Caitlin Coan and Elizabeth Hubbard (collectively, "Paralegals"), also of Potts-Dupre, charged a hourly billing rate that ranged from $95-$105 over the same time period.  (Id.)

3.   Unnamed attorneys at Oransky, Scaraggi & Borg ("Oransky attorneys") charged a hourly rate of $275.  (Id. at ¶ 4.)

In order to substantiate the reasonableness of these rates, Plaintiff argues that these rates are significantly lower than those provided for in the adjusted Laffey Matrix.  (Docket No. 60 ("Reply"), 2.)  "The Laffey Matrix, which takes its name from the case in which it was first employed, Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd 746 F.2d 4 (D.C. Cir. 1984), overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc), provides billing rates for attorneys in the Washington, DC market with various degrees of experience."  Interfaith Cmty. Org., 426 F.3d at 708.  The rates in the initial Laffey Matrix were subsequently updated.  Id.  The Third Circuit, in Interfaith Community Organization, held that the updated, or adjusted, Laffey Matrix rate is a reasonable community rate for the Washington, D.C. vicinage.[4]  Id. at 710.

---

[4]  Though the litigation in Interfaith Community Organization took place in northern New Jersey, not Washington, D.C., the Third Circuit held that, because "the prevailing party showed that it required the particular expertise of counsel from another vicinage, [and] that local counsel were unwilling to take on the litigation," the prevailing party was "entitled to compensation based on prevailing rates in [Washington, D.C.,] the community in which its attorneys practice."

Hawkins has been a licensed attorney since 1994.  (Hawkins Aff., ¶ 1.)  Thus, at the commencement of proceedings, in March 2006, she was either a twelfth- or thirteenth-year attorney.  At that time, the Laffey Matrix hourly rate for attorneys with between eleven and nineteen years of experience was $497.  (Reply, Ex. 1.)  That rate had increased to $557 for the period between June 1, 2008 and May 31, 2009—the most recent period for which Plaintiff seeks attorney's fees.  (Id.)  The Laffey Matrix hourly rate for paralegals and law clerks ranged from $136 to $152 between March 2006 and May 31, 2009.  (Id.)

Plaintiff does not argue that the adjusted Laffey Matrix has been adopted as a community hourly rate for attorneys in this vicinage.  Nor does Plaintiff provide any authority that the Laffey Matrix rates relate to similar services performed by lawyers of reasonably comparable skill and reputation.  Rather, Plaintiff implies that it is reasonable, in this vicinage, to seek attorney's fees based on rates that are significantly less than those enumerated in the Laffey Matrix.  This Court agrees.  Hawkins' rates are nearly one-half those specified by the Laffey Matrix for attorneys of equivalent experience.  Further, Laffey Matrix hourly rates for paralegals range between $41 and $47 higher than those charged for Paralegals' services here.  This Court holds that Plaintiff submits sufficient evidence to uphold the billing rates that factor into the lodestar amount it seeks.  Interfaith Cmty. Org., 426 F.3d at 708.

Defendants argue that the hourly rates claimed by Plaintiff's attorneys are too high.  In

---

Interfaith Cmty. Org., 426 F.3d at 699.  While Potts-Dupre only maintains an office in Washington, D.C., Plaintiff does not argue, let alone show, that it required the particular expertise of counsel from another vicinage, or that local counsel were unwilling to take on the litigation.  Thus, the appropriate community rate for Hawkins' services is that of this vicinage. See id. (the proper hourly rate considers "the rates prevailing in the [relevant] community for similar services" (internal quotation and citation omitted)).

7

support of this argument, Defendants rely on <u>I.B.E.W. Local No. 910 Welfare, Annuity, & Pension Funds v. Dexeletrics, Inc.</u>, 98 F. Supp. 2d 265 (N.D.N.Y. 2000).  In <u>I.B.E.W.</u>, the court held that the hourly rate for attorneys handling an ERISA action ranges from $175, for "attorneys with significant years of experience and numerous years of practice," to $100, for "newly-admitted attorneys practicing less than four years."  <u>Id.</u> at 275.  Defendants' reliance on <u>I.B.E.W.</u> is unpersuasive.  More persuasive is a recent case from this vicinage, in which hourly billing rates of up to $650 for partners, $425 for associates, and $200 for paralegals, were found to be reasonable rates in ERISA actions.  <u>Wachtel v. Health Net, Inc.</u>, Nos. 01-4183, 03-1801, 2007 WL 1791553, at *3 (D.N.J. June 19, 2007); <u>see also</u> <u>Killian v. Johnson & Johnson</u>, No. 07-4902, 2009 WL 537666, at *10  (D.N.J. March 4, 2009) (adopting the magistrate judge's recommendation that held reasonable, in an ERISA action, market rates in the Trenton vicinage of $450 per hour for partners, between $210 and $235 per hour for associates, and $100 per hour for paralegals).

Regarding the hourly rate charged by Oransky attorneys, Plaintiff proffers no evidence as to the experience of the attorneys who worked on this case.  Although that omission prevents this Court from calculating attorney's fees with exactitude, the hourly rate of $275 per hour is within the realm of reasonable rates, as discussed in <u>Wachtel</u>.  <u>See</u> <u>Wachtel</u>, 2007 WL 1791553, at *3.

### (2)      Hours Reasonably Expended

The lodestar calculation also requires a court to determine the number of hours reasonably expended on litigation.  <u>Hensley</u>, 461 U.S. at 433.  The party seeking a fee award must submit evidence to support the hours worked.  <u>Id.</u>  Where the documentation of such evidence is inadequate, a court may reduce the award accordingly.  <u>Id.</u>  Furthermore, the court

8

should exclude from the lodestar calculation any hours that were not "reasonably expended." Id. at 434.

Here, Plaintiff submits evidence of the hours worked by Hawkins, Paralegals, and Oransky attorneys.  (Hawkins Aff., Exs. 1, 2.)  According to that evidence, Hawkins billed 138 hours, Paralegals billed 14.2 hours, and Oransky attorneys billed 37.05 hours for work related to this matter.  (Id.)  Defendants do not contest as unreasonable any of the hours claimed.  Rather, they merely reiterate the requirement that Plaintiff "produc[e] contemporaneous time records that 'specify for each attorney, the date, the hours expended, and the nature of the work done,' so the court can audit the hours and determine whether they were reasonably expended."  (Opp. at 4 (quoting Hensley, 461 U.S. at 433).)

This Court finds Plaintiff's records sufficient to justify the hours billed by the two firms involved in this case.  The records adequately "specify for each attorney [and legal staff member] the date, the hours expended, and the nature of the work done."  Hensley, 461 U.S. at 433.  An audit of the hours demonstrates that they were reasonably expended, with the exception of those hours related to Hawkins travel to and from this Court for proceedings in this case.  See infra, Section B.

**B.     Costs**

Plaintiff likewise submitted to this Court an accounting of costs related to this case.  (Id., Ex. 1.)  Defendant contests two aspects of the costs submitted by Plaintiffs:  (1) costs related to Hawkins' travel time, and (2) costs related to computerized legal research.

**(1)     Travel Time**

Plaintiff's submission of costs includes 8.5 hours of billable time for travel on May 8,

2007, by Hawkins, to and from oral argument before this Court, and 5 hours of billable time for travel on July 24, 2008, by Hawkins, to and from a damages hearing, also before this Court. (Mot., Ex. 1 at 2, 4.)  Plaintiff also seeks reimbursement of travel expenses incurred, apparently related to travel to and from these two appearances.  (Id. at 4, 5.)  Defendant argues that Plaintiff is not entitled to attorney's fees or costs related to Hawkins' travel.  (Opp. 6-7.)

"[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." Interfaith Cmty. Org., 426 F.3d at 710.  "However, where forum counsel are unwilling to represent plaintiff, such costs are compensable."  Id.

In this case, Plaintiff does not argue that counsel from within the forum was unwilling to represent it in this action.  Thus, Plaintiff may not be awarded compensation for Hawkins' travel time or travel costs.[5]  Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 312 (3d Cir. 2008).

### (2)    Computerized Legal Research

Plaintiff's costs also include $9622.32, which represents the amount spent by Potts-Dupre for the use of Westlaw and Lexis for research related to this matter.[6]  (Hawkins Aff., Ex. 1 at 5-6.)  Defendants argue that Plaintiff is not entitled to reimbursement such costs.  (Opp. 7.)  In response, Plaintiff submits an affidavit by Hawkins, in which she states that it is the practice of Potts-Dupre to bill its clients for the cost of computerized research.  (Reply, Affidavit of

---

[5]  Plaintiff does not claim reimbursement for any costs submitted by Oransky attorneys.

[6]  Defendants claim that Plaintiff submitted charges for Westlaw and Lexis totaling $9612.24.  (Opp. 7.)

Attorney in Further Support of Damages Award ("Hawkins Aff. II"), ¶ 1.)  "The cost of

computerized research is not incorporated in the hourly rate of any of the attorneys at the firm,

primarily because the reliance on electronic databases such as Westlaw and Lexis are used only

on an 'as-needed' basis."  (Id. at ¶ 2.)

This Court has found no Third Circuit authority that specifically addresses whether

Plaintiff can be reimbursed for costs associated with its attorney's use of Westlaw and Lexis for

research related to this matter.  Absent such authority, this Court finds persuasive the Second

Circuit's opinion in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,

369 F.3d 91, 97 (2d Cir. 2004), in which the court held that "the charges for such online research

may properly be included in a fee award," where a firm normally bills its paying clients for that

cost, because "the use of online research services likely reduces the number of hours required for

an attorney's manual search."  See also Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 975

(D.C. Cir. 2004) (online research costs are reimbursable because they presumably save money by

making legal research more efficient); In re Continental Illinois Sec. Litig., 962 F.2d 566, 570

(7th Cir. 1992) (online research costs are reimbursable because paying clients reimburse lawyers

Lexis and Westlaw expenses, just as paying clients reimburse lawyers' paralegal expenses); see

also Case v Unified Sch. Dist. No. 233, 157 F.3d 1243, 1257-58 (10th Cir. 1998) ("Reasonable

expenses incurred in representing a client in a civil rights case should be included in the

attorney's fee award if such expenses are usually billed in addition to the attorney's hourly

rate.").[7]

_____

[7]  The cases on which Defendant relies—Fink v. City of New York, 154 F. Supp.2d 403,
415 (E.D.N.Y. 2001); BD v. DeBuono, 177 F. Supp. 2d 201, 209 (S.D.N.Y. 2001);  L.I. Head
Start Child Dev. Services, Inc. v. Kearse, 96 F. Supp. 2d 209, 215-16 (E.D.N.Y. 2000)—rely, in

This Court holds that Defendants shall reimburse Plaintiff for the use of computerized research services, by Hawkins and Paralegals, related to this case.

## II.     Audit Fees And Errors

### A.     Audit Fees

Plaintiff seeks costs of $22,086.50—$5,698.75 from Starko, and $16,387.75 from Star-Lo—representing the fees paid to auditor Novak Francella, who performed the audits in this action.  (Mot. 5.)  Defendants argue that the rate charged by Novak Francella was excessive, and that the costs related to the audit should be further reduced because the audit invoices lack specificity as to the services provided.  (Opp. 8.)

Plaintiff provides a lodestar calculation of the audit fees, which specifies the hours worked by each auditor, broken down by year and the defendant on which the audit was conducted.  (Reply, Affidavit of Auditor in Further Support of Damages Award ("Auditor Aff."), ¶ 13.)  Novak Francella billed at hourly composite rates of $68 in 2005 and 2007, and $79 in 2008.  (Auditor Aff. 13.)  Defendants argue that these rates are excessive, stating that "the parallel Local 102 audit program pays approximately $75 per hour," and that the auditors here bid a composite rate of $84 per hour.  (Opp. 8.)  Regardless of the composite rate quoted by

---

turn, on Evergreen Pipeline Constr. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2d Cir. 1996).  In Evergreen, the Second Circuit held "that computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost."  Id.

In Arbor Hill, however, the Second Circuit narrowed the Evergreen court's holding, explaining that, "Evergreen was not concerned with a fee-shifting statute.  Rather, it held that denial of reimbursement for Westlaw expense was within the discretion of the district court in determining an appropriate sanction to be imposed pursuant to Fed. R. Civ. P. 11."  Arbor Hill, 369 F.3d at 98.  "[I]n the context of a fee-shifting provision, the charges for [] online research may properly be included in a fee award."  Id.

Novak Francella, the composite rates that it actually billed are not excessive in light of the Local

102 rate.  For the majority of hours, the composite hourly auditor rate is, in fact, below the audit

rate cited by Defendants as reasonable.

Regarding the hours worked, the auditor billed 62.25 hours in 2005, 108.75 hours in

2005, and 60.25 hours in 2008, for audits of Star-Lo; and 47.50 hours in 2007, and 31.25 hours

in 2008, for audits of Starko.  (Auditor Aff. ¶ 13.)  Based on this Court's extensive and

substantial experience with this case, the hours billed by Novak Francella are eminently

reasonable.

### B.    Audit Errors

Defendants also argue that the audits submitted by Plaintiff are rife with errors and must

be adjusted.  (Opp. 9.)  Defendants attach to their opposition brief an affidavit compiling those

alleged errors.  (Opp., Affidavit of Joseph Barchetto.)  In total, Defendants argue that the

contributions due to Plaintiff by Star-Lo should be reduced by $21,189.42, and the contributions

due to Plaintiff by Starko should be reduced by $6,660.34.  (Opp. 9.)

Defendants, in challenging the results of Plaintiff's audits, seek to relitigate the core issue

already decided by this Court in its summary judgment Opinion.[8]  Nat'l Elec. Benefit Fund, 2008

WL 2683617.  This Court also denied Defendants' motion for reconsideration of that Opinion.

(Docket Nos. 65, 66.)  This Court will not entertain Defendants' further efforts to relitigate issues

---

[8] The case on which Defendants rely for the argument that the contributions due by
Defendants to Plaintiff should be reduced, Fox Valley Laborers Fringe Benefit Funds v.
Chicagoland Paving Contractors, No. 93-5403, 1994 WL 142985 (N.D. Ill. Apr. 15, 1994), held
that errors in an audit prevented summary judgment in favor of a plaintiff.  The issue did not
arise, as it does here, in the context of a party's motion for damages, attorney's fees, and costs,
after summary judgment has been entered on behalf of that party.  Thus, Fox Valley is inapt.

already decided in this case.

Plaintiff concedes that there are several plain errors in the audit.  (Opp. 5.)  This Court shall order reductions in the contributions adjusting for these errors.  Thus, the contribution owed to Plaintiff by Starko will be reduced by $1528.41 (Auditor Aff. ¶ 3), and the contribution owed to Plaintiff by Star-Lo will be reduced by $153.45.  (Auditor Aff. ¶ 8.)

**III.     Reduction Based On Informal Settlement Offer**

Finally, Defendants argue that Plaintiff's attorney's fees and costs should be reduced, because it rejected Defendants' settlement offer of $18,957.58, made on June 14, 2007.  (Docket No. 73, 2.)  Defendants argue that a recent Third Circuit case, <u>Lohman v. Duryea Borough</u>, 574 F.3d 163 (3d Cir. 2009), provides that this Court may reduce the attorney's fees to be awarded Plaintiff based on Plaintiff's rejection of that offer.  (Docket No. 73.)  This Court is unconvinced by Defendants' argument.  <u>Lohman</u> is not dispositive on this issue.  The award to Plaintiff shall not be reduced.

In <u>Lohman</u>, the Third Circuit addressed the question of whether, and to what extent, a trial court may consider settlement negotiations when awarding attorney's fees.  <u>Id.</u> at 164.  The plaintiff brought an action asserting numerous claims against his employer relating to his discharge.  <u>Id.</u> at 164-65.  "Only" three First Amendment claims survived summary judgment.  <u>Id.</u> at 165.  Defendants made three settlement offers after trial commenced, including one for $75,000.  <u>Id.</u>  The plaintiff rejected each offer, prevailed at trial, and was awarded, by the jury, $12,205 for lost wages and nominal damages.  <u>Id.</u>  The plaintiff moved the court for attorney's fees and costs of $112,883.73.  <u>Id.</u>

The district court granted the plaintiff's motion in part, awarding $30,000 in attorney's

fees and $4251.77 in costs.  Id.  The district court calculated a lodestar of $62,986.75, but reduced that lodestar based on the plaintiff's limited success.  Id. at 166.  Specifically, the court noted that the plaintiff would "have achieved a much greater level of success if [he] had settled the case."  Id.  The plaintiff appealed, arguing that the district court erred by using evidence from settlement negotiations to reduce the award.  Id. at 167.

The Third Circuit affirmed the district court, holding that is permissible for a district court to consider settlement negotiations in its analysis of what constitutes a reasonable fee award.  Id.  Evidence of negotiations "can be relevant when comparing what a plaintiff 'requested' to what the plaintiff was ultimately 'awarded.'"  Id.  The court clarified that a district court is "free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages."  Id. at 169.  It pointed out, however, that the plaintiff in Lohman rejected a settlement offer that was more than six times the amount awarded by the jury.  Id.  It was proper, therefore, for the district court to consider the plaintiff's lack of success, when comparing the jury award to the settlement offer, in determining the attorney's fees to be awarded to the plaintiff.  Id.

Defendants argue that, pursuant to Lohman, this Court should reduce Plaintiff's fees, because Defendants offered Plaintiff a check for $18,957.58—the amount of delinquent employee benefit plan contributions that Plaintiff's auditor determined that defendant Star-Lo failed to pay Plaintiff for the years 2002 and 2003.  (Docket No. 73, 2.)  Thus, Defendants argue that, consistent with Lohman, this Court should consider the evidence of Defendants' settlement negotiations in the context of Plaintiff's Motion.  (Id.)

15

Unlike the plaintiff in <u>Lohman</u>, however, Plaintiff here succeeded on all of its claims.  In addition, Plaintiff is statutorily entitled to entry of an award of delinquent contributions, interest, audit fees, and attorney's fees and costs.  29 U.S.C. § 502(g)(2).  Defendants' offer, in contrast, merely represented the amount of delinquent contributions they owe Plaintiff.  The offer, therefore, was "not a fair measure of what Plaintiff is truly seeking in damages."  <u>Lohman</u>, 574 F.3d at 169.  Defendants' argument that this Court should reduce the attorney's fees award to Plaintiff, pursuant to <u>Lohman</u>, is denied.

## CONCLUSION

For the reasons detailed above, Plaintiff's motion for the award of damages, attorney's fees, and costs from Defendants is granted, subject to the following modifications:  (1) the lodestar calculation for Hawkins shall not include hours spent traveling; (2) Plaintiff shall not be reimbursed for expenses related to Hawkins' travel; and (3) the amount of contributions due to Plaintiff shall be reduced by $1528.41 and $153.45 for Starko and Star-Lo, respectively.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)

March16, 2010

16